PAID

MAR 1 5 2024

CLERK, U.S. DISTRICT COURT
COURT 4812

FILED

2024 MAR 15  AM 10: 25

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*ex rel.* [UNDER SEAL],<br><br>          Plaintiff,<br><br>  v.<br><br>[UNDER SEAL],<br><br>          Defendants. | Case No. 2:24-cv-02126-PA (MARx)<br><br>Hon. _____<br><br>**QUI TAM COMPLAINT**<br><br>**FILED UNDER SEAL**<br>**UNDER 31 U.S.C. § 3730(b)(2)**<br><br>**JURY TRIAL DEMANDED** |

**TO BE FILED UNDER SEAL**

**PURSUANT TO 31 U.S.C. § 3730(b)(2)**

Heidi Rummel, Esq.
CA Bar No. 18333(
699 Exposition Blvd
Los Angeles, CA 90089
Telephone: (213) 740-2865
Facsimile: (213) 740-5502
hrummel@law.usc.edu

Eric H, Jaso (*pro hac vice* admission pending)
Spiro Harrison & Nelson
363 Bloomfield Avenue, Suite 2C
Montclair, NJ 07042
Telephone: (973) 232-0881
Facsimile: (973) 232-0887
ejaso@shnlegal.com

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. |
| *ex rel.* AIDAN FORSYTH, | Hon. |
| Plaintiff-Realtor, | |
| vs. | **QUI TAM COMPLAINT** |
| ROLLINS-NELSON GROUP, LLC, | **FILED UNDER SEAL UNDER 31 U.S.C. § 3730(b)(2)** |
| CENTINELA GRAND INC., GLENDORA | **JURY TRIAL DEMANDED** |
| GRAND INC., VILLA DEL RIO INC., | |
| CENTURY VILLA INC., LONCH BEACH | |
| CARE CENTER INC., PACIFIC VILLA INC., | |
| TORRANCE CARE CENTER WEST INC., | |
| WEST COVINCE MEDICAL CENTER, | |
| AGATHOS SUPPORT SERVICE INC,, | |
| FLOWER VILLA INC., ZUMAYA | |
| HEALTHCARE LLC, VICKI ROLLINS, and | |
| WILLIAM NELSON | |
| Defendants. | |

- 1 -
US ex rel. Forsyth v. (UNDER SEAL)

On behalf of the United States of America (the "United States" or the "Government"), Plaintiff and Relator Aidan Forsyth ("Relator") files this *qui tam* action against Defendants Rollins-Nelson Group, LLC ("RNG"), Centinela Grand Inc. ("CGI"), Glendora Grand Inc. ("GGI"), Villa del Rio Inc. ("VDRI"), Century Villa Inc. ("CVI"), Long Beach Care Center Inc. ("LBCCI"), Pacific Villa Inc. ("PVI"), Torrance Care Center West Inc. ("TCCWI"), West Covina Medical Center ("WCMCI"), Agathos Support Service Inc. ("ASSI"), Flower Villa Inc. ("FVI"), Zumaya Healthcare LLC ("ZH") (together, "Corporate Defendants"), Vicki Rollins ("Rollins"), and William Nelson ("Nelson") (together, "Individual Defendants") (collectively, "Defendants") and alleges as follows:

## INTRODUCTION

1.      This is an action to recover treble damages, civil penalties and all other remedies on behalf of the United States of America in connection with the Defendants' materially false and fraudulent applications to the Government for loans under the Paycheck Protection Program ("PPP"), in violation of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA").

2.      Pursuant to the FCA, Relator seeks to recover, on behalf of the United States of America, damages and civil penalties arising from false or fraudulent claims for payment that Defendants submitted or caused to be submitted to the Federal Government-funded and/or subsidized PPP loan program.

## SUMMARY OF ALLEGATIONS

3.      The Paycheck Protection Program (PPP) was established to provide small businesses with the resources necessary to maintain their payroll and cover related overhead during the COVID-19 crisis. The Small Business Administration (SBA) provided guidance for implementation of the Paycheck Protection Program (PPP), including size eligibility requirements.

US ex rel. Forsyth v. (UNDER SEAL)

SHN\780223.1

4.      A business concern was "small" for the purpose of qualifying for a loan depending on its size when compared to a size standard, which was typically stated in terms of either receipts or employees. The business's designated representative was required to certify that the business had no more than 500 employees or, if they did have more than 500 employees, then it had a tangible net worth that would satisfy the SBA's alternative size standard.

5.      The Corporate Defendants were all incorporated in California, and each provided healthcare services. In their incorporation documents, each Corporate Defendant listed Robert Rigdon as its registered agent.

6.      At all times relevant to this action, Vicki Rollins and William Nelson were the co-owners of at least 11 healthcare facilities, at least seven of which were nursing home facilities.

7.      RNG, VDRI, CVI, LBCCI, WCMCI, FVI, and ZH all had the same mailing address of P.O. Box 5004 in Glendora, California 91740.

8.      CGI, GGI, and PVI all had the same mailing address of 805 W. Arrow Highway, Glendora, California 91740.

9.      The Corporate Defendants, in the aggregate, far exceeded the size and revenue limitations of businesses eligible to participate in the SBA programs, including the PPP loan program. Accordingly, none of the Corporate Defendants were eligible to receive PPP loans.

10.     In fact, the Form 5500 that was filed on behalf of RNG for the year 2020 indicates RNG had 2,196 participants in its Employee Benefit Plan at the beginning of the plan year.

11.     Nonetheless, in or about 2020, CGI, GGI, VDRI, CVI, LBCCI, PVI, TCCWI, WCMCI, ASSI, FVI, and ZH each submitted applications for first-draw PPP loans and did so using NAICS Codes 531120 and 623110, with revenue limits of $30 million, and 621111, with a revenue limit of $12 million, which limits the Corporate Defendants exceeded based on their annual payroll alone.

12.     Upon information and belief, Rollins and/or Nelson prepared or caused to be prepared the loan applications for each of the HCC entities as their designated authorized representative(s).

13.     The applications required the applicants' designated representatives to certify that the Corporate Defendants were eligible businesses under SBA rules.  The applications also required the representative to acknowledge that the information submitted was material to the Government, to certify that it was true and correct, and to acknowledge that submitting a materially false application would violate Federal law.

14.     However, in the Corporate Defendants' applications, the applicants' representatives falsely and fraudulently certified that the businesses were eligible businesses under SBA rules. They also expressly acknowledged that this was a material question, and that submitting a materially false application would violate federal law.

15.     In reliance on these false statements and certifications, multiple lenders extended PPP loans to the Corporate Defendants totaling over $13 million.

16.     In or about 2021, the Corporate Defendants sought and obtained forgiveness of their PPP loans.

17.     Relator files this *qui tam* lawsuit to enable the Government to recover from Defendants the SBA-guaranteed monies that were provided to Defendants as the result of their wrongdoing, and bank fees and costs paid by the Government.  Relator further seeks to recover treble damages and/or penalties as provided by the FCA.

## JURISDICTION, VENUE, AND SPECIAL REQUIREMENTS

18.     This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, under 31 U.S.C. § 3729 of the

- 4 -

False Claims Act, and under 28 U.S.C. § 1345, which provides the United States District Courts with original jurisdiction over all civil actions commenced by the United States of America.

19. In addition, the FCA specifically confers jurisdiction upon the United States District Courts under 31 U.S.C. § 3732. This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because the Defendants resided, had their principal places of business, and/or transacted business in this District.

20. Venue is proper in this District under 31 U.S.C. § 3732(a) because Defendants transacted business in this District and because the wrongdoing alleged herein took place within this and/or affected this District.

21. In accordance with 31 U.S.C. § 3730(b)(2), this Complaint has filed been filed *in camera* and will remain under seal for a period of at least 60 days and shall not be served on the Defendants until the Court so orders.

22. Pursuant to 31 U.S.C. § 3730(b)(2), the Relator must provide the Government with a copy of the Complaint and a written disclosure of substantially all material evidence and material information in his possession contemporaneous with the filing of the Complaint. Relator has complied with this provision by serving copies of the Complaint and such disclosure upon the Honorable E. Martin Estrada, United States Attorney for the Central District of California, and upon the Honorable Merrick B. Garland, Attorney General of the United States.

23. Relator is not aware that the allegations in this Complaint have been publicly disclosed. In any event, this Court has jurisdiction under 31 U.S.C. § 3730(e)(4) because the Relator is an "original source" since he has voluntarily provided his information to Government before filing this Complaint, and has knowledge which is both direct and independent of, and materially adds to, any public disclosures to the extent they may exist.

US ex rel. Forsyth v. (UNDER SEAL)

SHN\780223.1

**PARTIES**

24.     Plaintiff-Relator Aidan Forsyth resides at 55 West 8th Street, New York, NY 10011.

25.     At all times relevant to this action, Defendant Rollins-Nelson Group, LLC was a privately-held limited liability company incorporated in the State of California on or about June 10, 2014.  Its principal place of business was located at 805 W. Arrow Highway, Glendora, California 91740.  Rollins-Nelson was an operator of nursing facilities across the state of California.

26.     Defendant Centinela Grand Inc. was incorporated in the State of California on or about November 11, 2007. Its principal place of business was located at 2225 N. Perris Boulevard, Perris, California 91740. Centinela was a licensed skilled nursing facility.

27.     Defendant Glendora Grand Inc. was incorporated in the State of California on or about July 26, 2007. Its principal place of business was located at 805 W. Arrow Highway, Glendora, California 91740.  Glendora was a licensed skilled nursing facility.

28.     Defendant Villa Del Rio Inc. was incorporated in the State of California on or about December 12, 2017. Its principal place of business was located at 7002 Gage Avenue, Bell Gardens, California 90201. VDR was a licensed skilled nursing facility.

29.     Defendant Century Villa Inc. was incorporated in the State of California on or about December 7, 2012. Its principal place of business was located at 301 Centinela Avenue, Inglewood, California 90302. Century was a licensed skilled nursing facility.

30.     Defendant Long Beach Care Center Inc. was incorporated in the State of California on or about April 28, 2003. Its principal place of business was located at 2615 Grand Avenue, Long Beach, California 90815. LBCC was a licensed skilled nursing facility.

31.     Defendant Pacific Villa Inc. was incorporated in the State of California on or about September 5, 2014. Its principal place of business was located at 3501 Cedar Avenue, Long Beach, California 90807. PV was a licensed skilled nursing facility.

US ex rel. Forsyth v. (UNDER SEAL)

SHN\780223.1

32.    Defendant Torrance Care Center West Inc. was incorporated in the State of California on or about December 16, 1999. Its principal place of business was located at 4333/4315 Torrance Boulevard, Torrance, California 90503. TCCW was a licensed skilled nursing facility.

33.    Defendant West Covina Medical Center Inc. was incorporated in the State of California on or about August 22, 2023. Its principal place of business was located at 725 S. Orange Avenue West Covina, California 91790. WCMCI was a small community hospital, doing business as a general acute hospital.

34.    Defendant Agathos Support Service Inc. was incorporated in the State of California on or about February 15, 2017. Its principal place of business was located at 4333 Torrance Boulevard, Second Floor, Torrance, California 90503. Agathos operated as a support-services business.

35.    Defendant Flower Villa Inc. was incorporated in the State of California on or about November 1, 2007. Its principal place of business was located at 1480 S. La Cienega Boulevard, Los Angeles, California 90035. FVI operated as a convalescent hospital.

36.    Defendant Zumaya Healthcare LLC was a privately-held limited liability company incorporated in the State of California on or about August 29, 2014. Its principal place of business was located at 805 W. Arrow Highway, Glendora, California 91740. ZHLLC operated as an urgent care facility.

37.    Defendant Vicki Rollins was a resident of the State of California. She was a 50% owner of TCCWI, GGI, LBCCI, PVI, FVI, CVI, and WCMCI. As of January 4, 2023, Rollins was the CFO of CGI, GGI, and CVI; the Secretary of VDRI, LBCCI, PVI, and FVI; CEO and CFO of TCCWI; a member of ZH; and the Secretary and CFO of WCMCI.

38.    Defendant William Nelson was a resident of the State of California. He was a 50% owner of GGI, LBCCI, FVI, CVI and WCMCI. As of January 4, 2023, Nelson was the CEO and

1    Secretary of CGI, GGI and CVI; the CEO and CFO of VDRI, LBCCI, PVI and FVI; the Secretary

2    of TCCWI; the CEO of WCMCI; the Director, CEO, CFO and Secretary of ASSI; and the CEO and

3    a member of ZH.

4

5    ### GOVERNING LAWS, REGULATIONS, AND CODES OF CONDUCT
### The False Claims Act

6

7    39.    Originally enacted in 1863, the FCA was substantially amended in 1986 by the False

8    Claims Amendments Act.  The 1986 amendments enhanced the Government's ability to recover

9    losses sustained as a result of fraud against the United States.  Further clarifying amendments were

10    adopted in May 2009 and March 2010.

11    40.    The FCA imposes liability upon any person who "knowingly presents, or causes to

12    be presented [to the Government] a false or fraudulent claim for payment or approval;" or

13    "knowingly makes, uses or causes to be made or used, a false record or statement material to a false

14    or fraudulent claim;" or "knowingly makes, uses, or causes to be made or used, a false record or

15    statement material to an obligation to pay or transmit money or property to the Government, or

16    knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or

17    transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(A), (B), (G).  Any person

18    found to have violated these provisions or conspired to have violated these provisions is liable for a

19    civil penalty of at least $13,946.00 and up to $27,894.00 per claim plus three times the amount of

20    the damages sustained by the Government, as provided by 31 U.S.C. § 3729(a), 20 CFR Part 356

21    and 28 CFR Part 85 (*see also* 88 FR 5776, Feb. 12, 2024)

22    41.    The FCA defines the terms "knowing" and "knowingly" to mean that a person (1)

23    "has actual knowledge of the information;" (2) "acts in deliberate ignorance of the truth or falsity of

24    the information"; or acts "in reckless disregard of the truth or falsity of the information." 31 U.S.C.

25

26

27

28

- 8 -

§ 3729(b)(1)(A).  The statute provides that "no proof of specific intent to defraud" is required.  31 U.S.C. § 3729(b)(1)(B).

42.     The FCA also broadly defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that – (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government – (i) provides or has provided any portion of the money or property requested or demanded; or (ii) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded."  31 U.S.C. § 3729(b)(2)(A).

43.     The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery.  The complaint must be filed under seal without service on any Defendant. The complaint remains under seal while the Government conducts an investigation of the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

44.     In this action, and under well-established precedent, the false and fraudulent nature of Defendants' conduct is informed or measured by their violation of, or failure to comply with, certain statutes and regulations material to the submission of applications for government-subsidized and/or issued small business loans.

**The CARES Act Authorizes Paycheck Protection Program Loans and Economic Injury Disaster Loans and Grants**

45.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act (Pub. L. 116-136) (the "CARES Act" or the "Act") was enacted in March 2020 to provide emergency financial

US ex rel. Forsyth v. (UNDER SEAL)

SHN\780223.1

assistance to individuals and businesses affected by the COVID-19 pandemic. The Act provided the federal Small Business Administration ("SBA") with funding and authority to modify existing loan programs and establish a new loan program to assist small businesses adversely affected by the pandemic.

46.     Section 1102 of the CARES Act authorized the SBA to guarantee up to $349 billion in forgivable 7(a) loans to small businesses for job retention and other expenses.  This program was called the Paycheck Protection Program ("PPP").    In April 2020, Congress authorized over $300 billion to additionally fund the PPP.  In June 2020, the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116-142) was enacted which changed certain provisions of the PPP, including provisions relating to the maturity of loans, the deferral of loan payments, and loan forgiveness.

47.     Under the PPP, eligible businesses could obtain *one* SBA-guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

48.     The SBA used size standards to determine if a business was a "small business concern" and therefore eligible to apply for an SBA-guaranteed PPP loan. To be deemed eligible, a business had to have fewer than 500 employees or meet the SBA industry size standard, if more than 500. The Small Business Jobs Act of 2010, Section 1116 established an alternative size standard of not more than $15 million in tangible net worth and of not more than $5 million in the average net income after Federal income taxes (excluding any carry-over losses) of the applicant for the two full fiscal years before the date of the application.

49.     The SBA also considered whether a business had "affiliates" subject to mutual equity/stock ownership, overlapping management and/or control.  *See id.* Subpart A, § 121.103. Businesses which are "affiliates" of each other under the SBA's definitions "may be treated as one

- 10 -

party with such interests aggregated," including aggregating the businesses' annual receipts and number of employees. *See id.* §§ 121.103, 121.104 & 121.106. For purposes of the size standard, the size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, whichever is higher. 13 C.F.R. §121.301.

50.     The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans.  To obtain a PPP loan, a qualifying business (through its authorized representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.

51.     Specifically with regard to these eligibility criteria, the loan application asked, "Is the Applicant or any owner[1] of the Applicant an owner of any other business, or have common management with, any other business?" If the answer was yes, the applicant was required to "list all such businesses and describe the relationship on a separate sheet[.]"

52.     The borrower's authorized representative was required to certify, among other things, that:

- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if

---

[1] Defined by the SBA as an individual with a 20% or greater equity interest in the business.

US ex rel. Forsyth v. (UNDER SEAL)

applicable, the size standard in number of employees established by the SBA in 13
C.F.R. 121.201 for the Applicant's industry. * * *

- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.

53.    The borrower's authorized representative was also required to certify and initial, among other things, the business's average monthly payroll expenses and number of employees. This information was used to calculate the amount of money the business was eligible to be loaned. The applicant was also required to submit documentation showing payroll expenses, among other things.

54.    PPP loan applications were processed by participating financial institutions, which served as the lenders. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, were transmitted by the lender to the SBA in the course of processing the loan. SBA paid processing fees to lenders.

55.    Once a borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the participating lender, the lender submitted the application to SBA for an SBA loan number and after receiving that number it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

56.    A borrower was required to use PPP loan proceeds only for certain permissible expenses: payroll costs, interest on mortgages, rent and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expenses within a designated period (between eight and 24 weeks from receiving the proceeds) and uses at least 60% of the proceeds for payroll expenses.

US ex rel. Forsyth v. (UNDER SEAL)

SHN\780223.1

57.     The applicant's authorized representative was finally required to acknowledge and certify in good faith by initialing the following certification:

> that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

### SPECIFIC FRAUD ALLEGATIONS
#### The Corporate Defendants in the Aggregate were Too
#### Large to be Eligible for PPP Loans

58.     In the aggregate, the Corporate Defendants, being affiliates of one another, were far too large both in the number of employees and in their tangible net worth to be eligible to receive PPP loans.

59.     With regard to employees, RNG's IRS Form 5500 records reflect that by the end of 2020, it had 2,196 participants in the company's Employee Benefit Plan. Whether combined with its affiliates (*i.e.*, the other Corporate Defendants) or not, the number of full-time equivalent employees of all the Corporate Defendants well exceeded 500 full-time employees.

60.     With regard to Corporate Defendants' financial size, their tangible net worth well exceeded the maximums under the SBA's alternate size standards. Using the financial information of the for-profit Corporate Defendants as of December 31, 2019, their total tangible net worth was $22,842,561.00, whereas the SBA required it to be below $15 million.

61.     The Corporate Defendants' revenue exceeded the maximums permitted by the SBA as well. The NAICS codes used in the Corporate Defendants' SBA PPP loan applications had revenue limits of $12,000,000.00 and $30,000,000.00. Meanwhile, Corporate Defendants' net patient revenue was $125,730,143.00 for fiscal year 2018 and $138,993,407.00 for fiscal year 2019.

**I.  Despite Exceeding SBA's Aggregate Size Limit, CGI Applied for and Received a PPP Loan, Which was Later Forgiven.**

62.    In or about April 2020, CGI applied for a PPP Loan in the amount of $1,013,886.00.

63.    Upon information and belief, an authorized representative of CGI prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that CGI was a small business concern eligible for participation in the PPP Loan Program, by failing to acknowledge that the other Corporate Defendants were affiliates, and by omitting information concerning those companies' common ownership.

64.    Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.   Specifically, the representative falsely and fraudulently omitted to state that the other Corporate Defendants were affiliated businesses that shared common ownership.

65.    The authorized representative further falsely certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledged the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

66.    Upon information and belief, the representative prepared SBA Form 2483-SD using NAICS Code 623110, which, at the time, had a revenue limit of $30,000,000 with no employee size exceptions.

67.    The authorized representative executed, dated, and submitted the Form 2483-SD to City National Bank ("CNB"), a federally-insured financial institution and SBA participating lender based in Los Angeles, CA.

US ex rel. Forsyth v. (UNDER SEAL)

SHN\780223.1

68.     On or about April 27, 2020, in reliance on CGI's materially false and fraudulent representations and certifications in the loan application, CNB issued PPP loan # 6119107201 in the amount of $1,013.886.00 (the "CGI Loan").

69.     On or about May 5, 2022, the CGI Loan was forgiven in full, causing the United States to reimburse CNB for the full amount, which cost the Government at least $1,034,108.16.

**II. Despite Exceeding SBA's Aggregate Size Limit, GGI Applied for and Received a PPP Loan, Which was Later Forgiven.**

70.     In or about April 2020, GGI applied for a PPP Loan in the amount of $2,866,108.00.

71.     Upon information and belief, an authorized representative of GGI prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that GGI was a small business concern eligible for participation in the PPP Loan Program, by failing to acknowledge that the other Corporate Defendants were affiliates, and by omitting information concerning those companies' common ownership.

72.     Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.    Specifically, the representative falsely and fraudulently omitted to state that the other Corporate Defendants were affiliated businesses that shared common ownership.

73.     The authorized representative further falsely certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledged the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

74.     Upon information and belief, the representative prepared SBA Form 2483-SD using NAICS Code 621111, which, at the time, had a revenue limit of $12,000,000 with no employee size exceptions.

75.     The authorized representative executed, dated, and submitted the Form 2483-SD to CNB.

76.     On or about April 27, 2020, in reliance on GGI's materially false and fraudulent representations and certifications in the loan application, CNB issued PPP loan # 5647497201 in the amount of $2,866,108.00 (the "GGI Loan").

77.     On or about June 11, 2021, the GGI Loan was forgiven in full, causing the United States to reimburse CNB for the full amount, which cost the Government at least $2,897,517.40.

**III. Despite Exceeding SBA's Aggregate Size Limit, VDRI Applied for and Received a PPP Loan, Which was Later Forgiven.**

78.     In or about April 2020, VDRI applied for a PPP Loan in the amount of $1,633,419.00.

79.     Upon information and belief, an authorized representative of VDRI prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that VDRI was a small business concern eligible for participation in the PPP Loan Program, by failing to acknowledge that the other Corporate Defendants were affiliates, and by omitting information concerning those companies' common ownership.

80.     Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.   Specifically, the representative falsely and fraudulently

omitted to state that the other Corporate Defendants were affiliated businesses that shared common ownership.

81.     The authorized representative further falsely certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledged the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

82.     Upon information and belief, the representative prepared SBA Form 2483-SD using NAICS Code 621111, which, at the time, had a revenue limit of $12,000,000 with no employee size exceptions.

83.     The authorized representative executed, dated, and submitted the Form 2483-SD to CNB.

84.     On or about April 27, 2020, in reliance on VDRI's materially false and fraudulent representations and certifications in the loan application, CNB issued PPP loan # 6173887202 in the amount of $1,663,419.00 (the "VDRI Loan").

85.     On or about May 5, 2022, the VDRI Loan was forgiven in full, causing the United States to reimburse CNB for the full amount, which cost the Government at least $1,696,596.23.

**IV. Despite Exceeding SBA's Aggregate Size Limit, CVI Applied for and Received a PPP Loan, Which was Later Forgiven.**

86.     In or about April 2020, CVI applied for a PPP Loan in the amount of $867,556.00.

87.     Upon information and belief, an authorized representative of CVI prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that CVI was a small business concern eligible for participation in the PPP Loan Program, by failing to acknowledge that the other Corporate Defendants were affiliates, and by omitting information concerning those companies' common ownership.

88.     Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information. Specifically, the representative falsely and fraudulently omitted to state that the other Corporate Defendants were affiliated businesses that shared common ownership.

89.     The authorized representative further falsely certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledged the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

90.     Upon information and belief, the representative prepared SBA Form 2483-SD using NAICS Code 531120, which, at the time, had a revenue limit of $30,000,000 with no employee size exceptions.

91.     The authorized representative executed, dated, and submitted the Form 2483-SD to CNB.

92.     On or about April 28, 2020, in reliance on CVI's materially false and fraudulent representations and certifications in the loan application, CNB issued PPP loan # 1756707302 in the amount of $867,556.00 (the "CVI Loan").

93.     On or about June 11, 2021, the CVI Loan was forgiven in full, causing the United States to reimburse CNB for the full amount, which cost the Government at least $877,063.46.

**V. Despite Exceeding SBA's Aggregate Size Limit, LBCCI Applied for and Received a PPP Loan, Which was Later Forgiven.**

94.     In or about April 2020, LBCCI applied for a PPP Loan in the amount of $1,631,556.00.

- 18 -

US ex rel. Forsyth v. (UNDER SEAL)

SHN\780223.1

95.    Upon information and belief, an authorized representative of LBCCI prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that LBCCI was a small business concern eligible for participation in the PPP Loan Program, by failing to acknowledge that the other Corporate Defendants were affiliates, and by omitting information concerning those companies' common ownership.

96.    Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.    Specifically, the representative falsely and fraudulently omitted to state that the other Corporate Defendants were affiliated businesses that shared common ownership.

97.    The authorized representative further falsely certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledged the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

98.    Upon information and belief, the representative prepared SBA Form 2483-SD using NAICS Code 623110, which, at the time, had a revenue limit of $30,000,000 with no employee size exceptions.

99.    The authorized representative executed, dated, and submitted the Form 2483-SD to CNB.

100.    On or about April 28, 2020, in reliance on LBCCI's materially false and fraudulent representations and certifications in the loan application, CNB issued PPP loan # 1594897309 in the amount of $1,631,556.00 (the "LBCCI Loan").

- 19 -

101.  On or about May 5, 2022, the LBCCI Loan was forgiven in full, causing the United States to reimburse CNB for the full amount, which cost the Government at least $1,664,097.72.

### VI. Despite Exceeding SBA's Aggregate Size Limit, PVI Applied for and Received a PPP Loan, Which was Later Forgiven.

102.  In or about April 2020, PVI applied for a PPP Loan in the amount of $1,057,996.00.

103.  Upon information and belief, an authorized representative of PVI prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that PVI was a small business concern eligible for participation in the PPP Loan Program, by failing to acknowledge that the other Corporate Defendants were affiliates, and by omitting information concerning those companies' common ownership.

104.  Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.  Specifically, the representative falsely and fraudulently omitted to state that the other Corporate Defendants were affiliated businesses that shared common ownership.

105.  The authorized representative further falsely certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledged the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

106.  Upon information and belief, the representative prepared SBA Form 2483-SD using NAICS Code 623110, which, at the time, had a revenue limit of $30,000,000 with no employee size exceptions.

US ex rel. Forsyth v. (UNDER SEAL)

SHN\780223.1

107.    The authorized representative executed, dated, and submitted the Form 2483-SD to CNB.

108.    On or about April 28, 2020, in reliance on PVI's materially false and fraudulent representations and certifications in the loan application, CNB issued PPP loan # 1790747307 in the amount of $1,057,996.00 (the "PVI Loan").

109.    On or about May 5, 2022, the PVI Loan was forgiven in full, causing the United States to reimburse CNB for the full amount, which cost the Government at least $1,079,097.95.

**VII.    Despite Exceeding SBA's Aggregate Size Limit, TCCWI Applied for and Received a PPP Loan, Which was Later Forgiven.**

110.    In or about April 2020, TCCWI applied for a PPP Loan in the amount of $1,727,282.00.

111.    Upon information and belief, an authorized representative of TCCWI prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that TCCWI was a small business concern eligible for participation in the PPP Loan Program, by failing to acknowledge that the other Corporate Defendants were affiliates, and by omitting information concerning those companies' common ownership.

112.    Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.  Specifically, the representative falsely and fraudulently omitted to state that the other Corporate Defendants were affiliated businesses that shared common ownership.

113.    The authorized representative further falsely certified "that the information provided in this application and the information provided in all supporting documents and forms is true and

- 21 -

US ex rel. Forsyth v. (UNDER SEAL)

accurate in all material respects" and acknowledged the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

114.    Upon information and belief, the representative prepared SBA Form 2483-SD using NAICS Code 621111, which, at the time, had a revenue limit of $12,000,000 with no employee size exceptions.

115.    The authorized representative executed, dated, and submitted the Form 2483-SD to CNB.

116.    On or about April 29, 2020, in reliance on TCCWI's materially false and fraudulent representations and certifications in the loan application, CNB issued PPP loan # 2146057305 in the amount of $1,727,282.00 (the "TCCWI Loan").

117.    On or about June 11, 2021, the TCCWI Loan was forgiven in full, causing the United States to reimburse CNB for the full amount, which cost the Government at least $1,746,211.12.

**VIII.    Despite Exceeding SBA's Aggregate Size Limit, WCMCI Applied for and Received a PPP Loan, Which was Later Forgiven.**

118.    In or about April 2020, WCMCI applied for a PPP Loan in the amount of $1,864,790.00.

119.    Upon information and belief, an authorized representative of WCMCI prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that WCMCI was a small business concern eligible for participation in the PPP Loan Program, by failing to acknowledge that the other Corporate Defendants were affiliates, and by omitting information concerning those companies' common ownership.

120.    Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other

US ex rel. Forsyth v. (UNDER SEAL)

business, or have common management with, any other business?" and/or failed to provide a complete list of this required information. Specifically, the representative falsely and fraudulently omitted to state that the other Corporate Defendants were affiliated businesses that shared common ownership.

121.    The authorized representative further falsely certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledged the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

122.    Upon information and belief, the representative prepared SBA Form 2483-SD using NAICS Code 621111, which, at the time, had a revenue limit of $12,000,000 with no employee size exceptions.

123.    The authorized representative executed, dated, and submitted the Form 2483-SD to CNB.

124.    On or about April 29, 2020, in reliance on WCMCI materially false and fraudulent representations and certifications in the loan application, CNB issued PPP loan # 2232387306 in the amount of $1,864,790.00 (the "WCMCI Loan").

125.    On or about June 11, 2021, the WCMCI Loan was forgiven in full, causing the United States to reimburse CNB for the full amount, which cost the Government at least $1,885,226.05.

**IX. Despite Exceeding SBA's Aggregate Size Limit, ASSI Applied for and Received a PPP Loan, Which was Later Forgiven.**

126.    In or about April 2020, ASSI applied for a PPP Loan in the amount of $187,804.00.

127.    Upon information and belief, an authorized representative of ASSI prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that ASSI was a small

- 23 -

business concern eligible for participation in the PPP Loan Program, by failing to acknowledge that the other Corporate Defendants were affiliates, and by omitting information concerning those companies' common ownership.

128.   Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.  Specifically, the representative falsely and fraudulently omitted to state that the other Corporate Defendants were affiliated businesses that shared common ownership.

129.   The authorized representative further falsely certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledged the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

130.   Upon information and belief, the representative prepared SBA Form 2483-SD using NAICS Code 623110, which, at the time, had a revenue limit of $30,000,000 with no employee size exceptions.

131.   The authorized representative executed, dated, and submitted the Form 2483-SD to CNB.

132.   On or about April 30, 2020, in reliance on ASSI's materially false and fraudulent representations and certifications in the loan application, CNB issued PPP loan # 5073687308 in the amount of $187,804.00 (the "ASSI Loan").

133.   On or about May 5, 2022, the ASSI Loan was forgiven in full, causing the United States to reimburse CNB for the full amount, which cost the Government at least $191,539.50.

US ex rel. Forsyth v. (UNDER SEAL)

SHN\780223.1

**X. Despite Exceeding SBA's Aggregate Size Limit, FVI Applied for and Received a PPP Loan, Which was Later Forgiven.**

134.     In or about April 2020, FVI applied for a PPP Loan in the amount of $343,405.00.

135.     Upon information and belief, an authorized representative of FVI prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that FVI was a small business concern eligible for participation in the PPP Loan Program, by failing to acknowledge that the other Corporate Defendants were affiliates, and by omitting information concerning those companies' common ownership.

136.     Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.  Specifically, the representative falsely and fraudulently omitted to state that the other Corporate Defendants were affiliated businesses that shared common ownership.

137.     The authorized representative further falsely certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledged the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

138.     Upon information and belief, the representative prepared SBA Form 2483-SD using NAICS Code 623110, which, at the time, had a revenue limit of $30,000,000 with no employee size exceptions.

139.     The authorized representative executed, dated, and submitted the Form 2483-SD to CNB.

140.    On or about April 30, 2020, in reliance on FVI's materially false and fraudulent representations and certifications in the loan application, CNB issued PPP loan # 6355387304 in the amount of $343,405.00 (the "FVI Loan").

141.    On or about June 16, 2021, the FVI Loan was forgiven in full, causing the United States to reimburse CNB for the full amount, which cost the Government at least $347,215.38.

**XI. Despite Exceeding SBA's Aggregate Size Limit, ZH Applied for and Received a PPP Loan, Which was Later Forgiven.**

142.    In or about April 2020, ZH applied for a PPP Loan in the amount of $10,300.00.

143.    Upon information and belief, an authorized representative of ZH prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that ZH was a small business concern eligible for participation in the PPP Loan Program, by failing to acknowledge that the other Corporate Defendants were affiliates, and by omitting information concerning those companies' common ownership.

144.    Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.  Specifically, the representative falsely and fraudulently omitted to state that the other Corporate Defendants were affiliated businesses that shared common ownership.

145.    The authorized representative further falsely certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledged the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

146.    Upon information and belief, the representative prepared SBA Form 2483-SD using NAICS Code 525120, which, at the time, had a revenue limit of $30,000,000 with no employee size exceptions.

147.    The authorized representative executed, dated, and submitted the Form 2483-SD to CNB.

148.    On or about April 30, 2020, in reliance on ZH's materially false and fraudulent representations and certifications in the loan application, CNB issued PPP loan # 5206487301 in the amount of $10,300.00 (the "ZH Loan").

149.    Upon information and belief, the ZH Loan has been forgiven in full, causing the United States to reimburse CNB for the full amount, which cost the Government at least $10,477.00.

## THE GOVERNMENT HAS BEEN DAMAGED AS A RESULT OF DEFENDANTS' CONDUCT

150.    Defendants' materially false statements have caused the federal government to be defrauded of taxpayer funds in the approximate amount of $13 million.

## CLAIMS FOR RELIEF

### COUNT I
**False Claims Act:
Presenting or Causing to be Presented False and Fraudulent Claims
31 U.S.C. § 3729(a)(1)(A)**

151.    Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

152.    As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have knowingly presented, and caused to be presented, false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

153.    As a result thereof, the United States has been damaged in an amount equal to or greater than the amount paid by the United States for such false or fraudulent claims.

## COUNT II
### False Claims Act:
### Making or Using False
### Records or Statement to Cause Claims to be Paid
### 31 U.S.C. § 3729(a)(1)(B)

154.    Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

155.    As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have knowingly made, used, or caused to be made or used, false records or statements – *i.e.*, the false representations made or caused to be made by Defendants – material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B).

156.    As a result thereof, the United States has been damaged in an amount equal to or greater than the amount paid by the United States for such false or fraudulent claims.

## COUNT III
### False Claims Act: Conspiracy
### 31 U.S.C. § 3729(a)(1)(C)

157.    Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

158.    As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants conspired with and among each other, and with others, to make or present false or fraudulent claims, and performed one or more overt acts to effect the submission and cause the payment of false or fraudulent claims.

159.    As a result thereof, the United States has been damaged in an amount equal to or greater than the amount paid by the United States for such false or fraudulent claims.

# PRAYER FOR RELIEF

**WHEREFORE**, Relator, on behalf of the United States Government, demands judgment against the Defendants, ordering that:

A.   That Defendants be ordered to cease and desist from submitting any more false claims, or further violating 31 U.S.C. § 3729, *et seq.*;

B.   That judgment be entered in Relator's favor and against Defendants in the amount of each and every false or fraudulent claim, multiplied as provided for in 31 U.S.C. § 3729(a), plus a civil penalty of at least $13,946.00 and up to $27,894.00 per claim plus three times the amount of the damages sustained by the Government, as provided by 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see also* 88 FR 5776, Feb. 12, 2024), to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

C.   That Defendants be ordered to disgorge all sums by which they have been enriched unjustly by their wrongful conduct;

D.   That judgment be granted for Relator against Defendants for all costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Relator in the prosecution of this suit; and

E.   That Relator be granted such other and further relief as the Court deems just and proper.

# JURY DEMAND

Relator hereby demands a trial by jury as to all issues so triable.

US ex rel. Forsyth v. (UNDER SEAL)

SHN\780223.1

DATE:  March /5, 2024                          Respectfully submitted,

Heidi Rummel, Esq.
CA Bar No. 183331
699 Exposition Blvd.
Los Angeles, CA 90089
Telephone: (213) 740-2865
Facsimile: (213) 740-5502
hrummel@law.usc.edu

Eric H. Jaso (*pro hac vice* admission pending)
**SPIRO HARRISON & NELSON**
363 Bloomfield Avenue, Suite 2C
Montclair, NJ 07042
Telephone: (973) 232-0881
Facsimile: (973) 232-0887
ejaso@shnlegal.com

*Attorneys for Relator*

US ex rel. Forsyth v. (UNDER SEAL)

SHN\780223.1